Catherine C. ALIFF and James
B. Aliff, Appellants,

v.

David L. CODY, Respondent.

No. WD 57373.

Missouri Court of Appeals,
Western District.

June 30, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 2000.

Application for Transfer Denied
Oct. 3, 2000.

312 

H. William McIntosh, Steven Hobson, Kansas City, for appellant.

Gregory Minana, St. Louis, for respondent.

RONALD R. HOLLIGER, Judge.

Catherine C. Aliff and her husband, James B. Aliff, appeal from a judgment entered upon a jury verdict in favor of David L. Cody on their claim for damages for injuries sustained in an automobile accident. The Aliffs raise two points on appeal. They first contend that the trial court erred in denying them the opportunity to impeach one of Mrs. Aliff's treating doctors called by Mr. Cody by use of a claimed prior inconsistent statement. Secondly, they contend that the trial court committed plain error by allowing improper impeachment of Mrs. Aliff by a claimed prior inconsistent statement. This is the second appeal from the same judgment.[1]

## FACTS

On January 13, 1993,[2] Mrs. Aliff and Mr. Cody were involved in an automobile accident. The Aliffs filed suit in the Jackson County Circuit Court on May 19, 1995. The uncontested evidence was that Mrs. Aliff was diagnosed many months after the accident as having a herniated disc in her neck. On April 8, 1994, she underwent surgery by Dr. Parkins, an orthopedic surgeon, for repair of the herniation. During the surgery, she sustained a new injury to her spinal cord, leaving her partially paralyzed. The Aliffs brought their claim against Cody alleging that the accident with him caused the disc herniation and that he was responsible for that injury and the additional damage caused by the surgery. *Schumacher v. Leslie,* 360 Mo. 1238, 232 S.W.2d 913, 917 (1950). Causation of the disc injury was the hotly contested

1. In *Aliff I,* 987 S.W.2d 439 (Mo.App.1999), this court reversed the trial court's order granting a new trial based on an alleged nondisclosure by a venireman. Because the trial court had not ruled on other issues raised in the Aliffs' motion for new trial, the matter was remanded to the circuit court for consideration of those grounds. After further consideration, the trial court denied the motion for new trial. Aliffs now appeal the judgment.

2. *Aliff I* indicates that the accident date was February 20, 1992. A review of the third amended petition upon which Aliffs went to trial indicates the 1992 date was for an accident involving a Mr. Saunders, a co-defendant with Mr. Cody in the petition. The legal file in both *Aliff I* and this appeal clearly reveal that the Cody accident was on January 13, 1993. The claim against Saunders was settled before the trial that led to this appeal. Whether the claims for the two accidents were properly joined was not before this court in either *Aliff I* or now.

issue in the trial. Both issues raised on appeal deal with either the mechanics of Mrs. Aliff's claimed injury or aspects of damage causation. We reach those issues in spite of a general verdict in favor of Cody because the trial court directed a verdict in favor of the Aliffs on the issue of liability. The case was thus submitted to the jury expressly on the issue of causation and damages only. There was no real contest as to the fact of Mrs. Aliff's damage, but there was severely conflicting evidence whether the collision caused the disc herniation.

There was also conflicting evidence as to the force of the impact. The parties agreed that Mrs. Aliff received no medical diagnosis or treatment for some months after the accident. She testified of symptomatic complaints until she saw her primary physician, Dr. Hoecker, in early February 1994. She admitted she did not tell him on that first visit about the Cody accident occurring a year earlier, but did tell him what happened on her follow-up visit shortly thereafter. After a course of physical therapy, Dr. Hoecker referred her to Dr. Parkins. He ordered an MRI, which revealed the cervical disc herniation. Her surgery and tragic sequale followed in April 1994. At trial, the Aliffs presented expert causation testimony through Dr. Hoecker that the herniation was a result of the Cody collision. The Aliffs also presented expert and other testimony about the force of the impact.

Cody called Mrs. Aliff's surgeon as a witness. Dr. Parkins testified that although it was possible that the auto accident was a causative factor in the herniation, it was his expert opinion that the most probable cause was degenerative changes. At the conclusion of the defendants' evidence, Aliffs' counsel proposed to call both plaintiffs as rebuttal witnesses to

testify as to alleged prior inconsistent statements made by Dr. Parkins on the issue of causation.

There is no objection shown on the record to the proposed rebuttal testimony.[3] The record does reflect a statement by the court that "I'll maintain my same ruling." This was followed immediately by an offer of proof by the Aliffs. As part of the offer, Mrs. Aliff testified that she and her husband met with Dr. Parkins before the surgery and asked him what caused her disc herniation. Although saying she could not state his exact words, "[he] indicated that the cause of this was consistent with or what happens when you have a car wreck." Mr. Aliff offered to testify that Dr. Parkins stated "that the most probable cause of the herniated disc was the car accident." The case was submitted to the jury without any rebuttal testimony. Cody acknowledges that he did object to the proposed testimony and that the court sustained the objection.

### STANDARD OF REVIEW

■ Appellate review of error alleged in the admission or exclusion of evidence is limited to an abuse of discretion standard. The focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding the evidence.

■ A trial court possesses great discretion in its determination of whether evidence should be excluded. *State v. McKibben*, 998 S.W.2d 55, 58 (Mo.App. 1999); *Phillips v. American Motorist Ins. Co.*, 996 S.W.2d 584, 587 (Mo.App.1999). The trial court's decision to admit or exclude evidence is given substantial deference on appeal. *Felton v. Hulser*, 957 S.W.2d 394, 397 (Mo.App.1997). We are not bound on review by the rationale for

---

**3.** There was a discussion between the court and counsel in which Aliffs' counsel argued that a sufficient foundation for impeachment had been laid and that the only time the proposed impeachment could be proven was in rebuttal. Cody's counsel stated: "Merely the fact that the plaintiff's had testimony, your Honor—they need to show that the testimony was not anticipated. Therefore, I don't believe it's appropriate and we will stand on the brief." There is no "brief" included in the legal file.

the objection made or the reasons expressed by the trial court for excluding the evidence. "The trial court's ruling is upheld when there exists any recognizable ground on which the trial judge could have rejected the evidence." *State ex rel. Missouri Highway and Transp. Comm'n v. Buys*, 909 S.W.2d 735, 738 (Mo.App.1995). "Once the appellate court has found that the trial court had alternative choices that would not yield a result contrary to the law, however, the review ends, and the appellate court will affirm any of those choices." *Waters v. Barbe*, 812 S.W.2d 753, 757 (Mo.App.1991).

This Court's abuse of discretion review standard is quite severe:

Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 73 (Mo.banc 1999)(internal citations omitted). The burden of establishing abuse of discretion is on the appellant. *Klinckman v. Pharris*, 969 S.W.2d 769, 771 (Mo.App.1998). "Failure to admit evidence does not mandate a reversal of a judgment unless the error materially affected the merits of the action." *Environmental Waste Management, Inc. v. Industrial Excavating & Equipment, Inc.*, 981 S.W.2d 607, 613 (Mo.App.1998). "We will not reverse unless there is a substantial or glaring injustice." *State ex rel. Missouri Highway and Transp. Comm'n v. Pracht*, 801 S.W.2d 90, 93 (Mo.App.1990).

**POINT I**

The Aliffs first contend that the trial court erred in excluding their proposed rebuttal testimony because it would have established a prior inconsistent statement by Dr. Parkins, which was admissible for the purposes of impeachment and as substantive evidence on the central issue of causation. Cody contends that the rejected testimony lacked an adequate foundation, was not really inconsistent testimony, and was not proper rebuttal. He further argues that even if the testimony was properly admissible, its exclusion was not prejudicial error that would warrant reversal.

***Was the Testimony Proper Rebuttal?***

 Cody argues that the Aliffs' proffered testimony was not proper rebuttal because it was evidence that could have been presented in the Aliffs' case in chief and did not address new points first raised by him. He further argues there was no prejudice from its exclusion and the court did not abuse its discretion. The order of proof is discretionary with the trial judge. *St. Louis Southwestern Ry. Co. v. Federal Compress and Warehouse Co.*, 803 S.W.2d 40, 45 (Mo.App.1990). The admissibility of rebuttal evidence is within the discretion of the trial court. *Bray v. Bi–State Dev. Corp.*, 949 S.W.2d 93, 100–01 (Mo.App. 1997). "Determining the scope of rebuttal is in the trial court's discretion and, absent an abuse of that discretion, we will not reverse the trial court's decision." *State v. Petty*, 967 S.W.2d 127, 140–41 (Mo.App. 1998). "Rebuttal evidence may explain, counteract, repel, or disprove a defendant's evidence either directly or by implication ." *Id.* at 141. "Rebuttal evidence is evidence tending to disprove 'new points first opened by' the opposite party." *Edley v. O'Brien*, 918 S.W.2d 898, 907 (Mo.App. 1996) (internal citations omitted).

 "A party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible." *Bray*, 949 S.W.2d at 101. *See also, St. Louis Southwestern Ry. Co.*, 803 S.W.2d at 45. The use of rebuttal is not, however, unfettered. "[A] party cannot, as a matter of right, offer in rebuttal evi-

dence which was appropriate or should have been proffered in the case in chief, even if it tends to contradict or rebut the adverse party's evidence." *Bray*, 949 S.W.2d at 101. "Trial courts have considerable discretion in excluding or admitting rebuttal testimony which was available and should have been offered in the case in chief." *Edley*, 918 S.W.2d at 907.

▆▆▆▆ Cody argues that the Aliffs mischaracterize the issue as involving a prior inconsistent statement to avoid the general rule that evidence not be admitted in rebuttal to support a party's case in chief. "[W]hile the court may in its discretion admit in rebuttal evidence which more properly should have been introduced in chief, it may, in its discretion, and generally should, decline to permit either party to introduce evidence in support of his case in chief on rebuttal." *Id.* "A party cannot, as a matter of right, offer in rebuttal evidence which was proper or should have been introduced in chief, even though it tends to contradict the adverse party's evidence and, while the court may in its discretion admit such evidence, it may and generally should decline to admit the evidence." *Gassen v. Woy*, 785 S.W.2d 601, 605 (Mo. App.1990). "However, rebuttal testimony is not necessarily inadmissible simply because it is cumulative of the state's evidence-in-chief or because it would have been better procedure to offer it as part of the state's evidence-in-chief instead of rebuttal." *Petty*, 967 S.W.2d at 141.

The Aliffs argue that they could not have presented Dr. Parkins' statement in their case in chief because it was hearsay. They rely on *Waters, supra*, for the proposition that the trial court's exclusion of the evidence during rebuttal was reversible error. In *Waters*, this court held that the trial court's exclusion of testimony offered by the plaintiff in rebuttal to show an inconsistent statement by the defendant "offended the logic of the circumstances and constituted an untenable judicial act that worked an injustice upon the plaintiff." *Id.* at 759. Waters had surgery in 1983 at the UMKC dental school to correct a protrusion of her lower teeth. Drs. Robert Hiatt and David Moore performed the surgery. Approximately a year later, Dr. Barbe referred her back to the UMKC dental school because her upper and lower teeth did not touch and she experienced numbness from her prior surgeries. He eventually performed surgery on Waters in an effort to correct the problems. In 1985, she filed suit against Drs. Hiatt and Moore. She gave interrogatories at the request of Dr. Moore. She eventually settled with these parties. In 1986, she filed suit against Dr. Barbe, claiming he negligently and carelessly failed to exercise the skill and care required of him. Defense counsel questioned Waters about injuries she described in her answers to Dr. Moore's interrogatories. In response, Waters offered the rebuttal testimony of Dr. Ackerman. She contended that the defendant's testimony was so surprising and untruthful that she had to call Dr. Ackerman, with whom Dr. Barbe consulted prior to surgery. The court overruled her motion but permitted an offer of proof. Dr. Ackerman testified that he had discussed Waters' condition with Dr. Barbe and determined any further surgery contraindicated after her initial surgery with the other doctors. This court agreed with Waters' claim that nothing obliged her to advise Dr. Barbe of her intention to call Dr. Ackerman. Dr. Barbe had put on two other witnesses to testify that the surgery was necessary to correct her problem. This court determined that Waters should have been permitted to call a witness to contradict that testimony.

Cody contends that the Aliffs took a strategic gamble by not attempting to offer Dr. Parkins' statement during their case in chief. Cody argues that, even if he would have objected to the Aliffs' testimony regarding the statement as hearsay, the evidence could have been admitted upon Aliffs' counsel's representation that an adequate foundation would be made. *See, Peterson v. National Carriers, Inc.*, 972

S.W.2d 349, 358 (Mo.App.1998) (trial court possesses discretion to admit evidence "based on the representation of counsel that the foundation for the evidence would be introduced later"). Cody also argues that *Waters* involved the issue of whether the rule requiring disclosure of experts prevented expert testimony in rebuttal and whether the witness could be called to contradict the defendant's "surprising and untruthful" testimony. In fact, we see the principal issue in *Waters* as involving the distinction between contradiction and impeachment given the limitation against general impeachment of a party's own witness except by prior inconsistent statement. *Waters*, 812 S.W.2d at 757.[4]

Cody also contends that the statement would not be proper rebuttal because it does not address new points raised by Cody. He contends that because the issue of causation was first raised (and necessarily so) in the Aliffs' case in chief, the defendant's testimony on the same subject by Dr. Parkins was not "a new point first opened by" the opposing party, relying on *Edley*, 918 S.W.2d at 907. *Edley* involved rebuttal evidence that clearly could have been introduced in the plaintiff's case. It did not involve evidence that was allegedly a prior inconsistent statement. Similarly, *Stone v. City of Columbia*, 885 S.W.2d 744, 748 (Mo.App.1994), did not involve an alleged prior inconsistent statement. Moreover, here it was the testimony by Dr. Parkins that the injury was not caused by the accident that was "the new point first opened by the opposing party." *Edley* at 907. Cody is correct in arguing that the trial court has considerable discretion in allowing rebuttal evidence that merely repels or disproves evidence introduced by the defendant.

Cody does not disagree that if plaintiffs had proffered the same testimony in their case in chief that it would have been sub-

ject to a hearsay objection. Instead, he argues that he might not have made the objection, it might not have been sustained, or the Aliffs might have been allowed to present the evidence upon representation to the court that Dr. Parkins would testify oppositely in the defendant's case. Obviously, the plaintiffs were not in control of whether Dr. Parkins would testify in Cody's case, nor could they be assured he would testify inconsistently. Most importantly, Cody's argument ignores the fundamental historical purpose underlying the use of a prior inconsistent statement. Such evidence is intended to attack credibility. Self-contradiction is probably the most frequently employed method of impeachment. John W. Strong, *McCormick on Evidence*, 5th Ed., § 33, at 123–124 (1999). The rights of cross-examination and to prove an inconsistent statement denied by a witness on direct examination "provide perhaps the most effective truth searching device known to the law." *State v. Johnson*, 524 S.W.2d 97, 104 (Mo. banc 1975) (Holman dissenting).

■■■■■ We must consider whether the rejected testimony was a properly presented and inconsistent statement. If a plaintiff wishes to impeach a defense witness with a prior inconsistent statement that is in writing, the plaintiff may impeach the witness with the statement directly on cross-examination. However, if the prior inconsistent statement is oral, the plaintiff may lay a foundation for the statement during cross-examination by asking if the conversation occurred and if the witness made the statement; if the witness denies making the statement, then the only way to prove the witness made it is to offer extrinsic proof (a witness to the statement) on rebuttal. We see no reason for a different rule for an oral inconsistent statement simply because it is only offered

---

**4.** The *Waters* court held that the proposed testimony was contradiction rather than impeachment although acknowledging that contradiction evidence often has aspects of general impeachment by attack on credibility. In *Waters*, the plaintiff had called Dr. Barbe as an adverse witness, thus raising the argument about general impeachment of one's own witness.

and only could be offered in rebuttal. Moreover, to require the plaintiff to introduce the testimony in his own case, if permitted, would destroy its essential nature as impeachment. Only recently have prior inconsistent statements been broadly considered substantive evidence. *Reno v. Wakeman,* 869 S.W.2d 219, 223 (Mo.App. 1993). Its most important purpose remains to test credibility. In addition, "[a] witness may be impeached by extrinsic proof of a prior inconsistent statement as to material matters." *Lineberry v. Shull,* 695 S.W.2d 132, 136 (Mo.App.1985). Cody's position would have the effect of preventing the impeachment of a defense witness if the prior inconsistent statement was oral rather than written, unless the inconsistent testimony was a surprise. Because a witness may be impeached with either a written or an oral inconsistent statement, the trial court could have properly allowed the Aliffs to impeach Dr. Parkins with the prior statement by calling Mrs. Aliff to testify in rebuttal if the statement was truly inconsistent and the Aliffs laid a proper foundation for its admission. We now consider whether the trial court erred by excluding the evidence to impeach Dr. Parkins with his prior statement in rebuttal.

In order to determine if the trial court erred by excluding Dr. Parkins' prior statement, we must consider the following factors: (1) whether his statement prior to trial was inconsistent with his trial testimony, (2) if the prior statement is inconsistent with his trial testimony, whether the Aliffs laid a proper foundation for the admission of the inconsistent statement, and (3) whether the trial court abused its discretion by its refusal to allow the impeachment of Dr. Parkins on rebuttal with the prior inconsistent statement. If the trial court abused its discretion, we must then determine whether the error materially affected the merits of the action, thereby resulting in prejudice to the Aliffs. *Richcreek v. General Motors Corp.,* 908 S.W.2d 772, 778 (Mo.App.1995);

§ 512.160 .2, RSMo 1994; Supreme Court Rule 84.13(b).

We first address the foundational requirement. The trial court exercises its discretion in the determination of whether a sufficient foundation has been laid for the admission of a prior inconsistent statement; our review is limited to determining if the trial court abused its discretion. *State v. Boyd,* 871 S.W.2d 23, 26 (Mo.App.1993). "In laying the proper foundation, it is necessary to ask the witness whether he or she made the statement, quote the statement, and point out the precise circumstances under which it was allegedly made, including to whom the witness spoke and the time and place of the statement." *Id.* This rule is intended to give the witness the opportunity to explain the prior inconsistent statement. *K.J.B. v. C.A.B.,* 883 S.W.2d 117, 120 (Mo. App.1994). "The purposes of this traditional requirement are: to avoid unfair surprise to the adversary; to save time, since an admission by the witness may make extrinsic proof unnecessary; and to give the witness a fair chance to explain the discrepancy." *McCormick, supra,* at 133. A response by the witness that he cannot recall the prior statement is the equivalent of a denial for foundational purposes. *State v. Poe,* 708 S.W.2d 723, 731 (Mo.App.1986).

Cody argues that an insufficient foundation was laid for the proposed testimony by Mr. Aliff that Dr. Parkins told them that the "most probable cause" was the auto accident. He claims that the witness must be asked the specific question upon which the party is seeking to impeach the witness. *Johnson v. National Super Markets, Inc.,* 752 S.W.2d 809, 812 (Mo.App.1988). The Aliffs argue that literal exactness of the quotation is not necessary. They rely upon *Janis v. Jenkins,* 58 S.W.2d 298, 301 (Mo.1933). "The impeaching testimony need not be in the same language asked of the witness to be impeached. If the statement shown to have been made previously by the witness

is substantially inconsistent with his testimony at the trial, that is sufficient." The Aliffs' argument misunderstands that holding. It is the prior, out of court statement that may be related in substance without the necessity of an exact quotation. 98 C.J.S. Witnesses Sec. 617. It still remains necessary that the witness be confronted with the question. At trial, Dr. Parkins was never asked whether he had told the Aliffs of a different opinion on the *probability* of causation.[5] There was no sufficient foundation laid for the proffered impeachment evidence from Mr. Aliff. In the absence of an adequate foundation for James' testimony, the trial court's exclusion of James' rebuttal testimony was not error. Cody makes no argument that Mrs. Aliff's proposed testimony lacked foundation. We, therefore, proceed to consider his argument that there was no real inconsistency between the doctor's trial testimony and the alleged previous statement made to Mrs. Aliff.

■ On cross-examination, counsel for the Aliffs asked Dr. Parkins about a conversation he had with the Aliffs prior to Mrs. Aliff's surgery. Counsel asked the doctor if one of the questions the Aliffs asked him related to the cause of the herniated disc. He answered, "I don't specifically recall, but it would not surprise me." Counsel then asked Dr. Parkins: "Do you recall telling them that this disc herniation at C6–7 was *consistent with* the car wreck that's described in your records?" His answer: "I don't recall that." In rebuttal, the Aliffs attempted to introduce a statement by Dr. Parkins prior to surgery regarding the causation of her injury. The trial court excluded the evidence but permitted the Aliffs to make an offer of proof. Counsel for the Aliffs asked Mrs. Aliff if she questioned Dr. Parkins regarding "what he thought caused your disc herniation." Mrs. Aliff testified that Dr. Parkins "indicated that the cause of this was consistent with or what happens when you have a car wreck." The time, place and circumstances of the statement are clear from the previous testimony. Counsel for the Aliffs laid a proper foundation for the admission of Mrs. Aliff's version of the statement Dr. Parkins made to them prior to her surgery by specifically asking Dr. Parkins if he told the Aliffs that Mrs. Aliff's injury was "consistent with" the car wreck.

■ Next, we must determine if an inconsistency exists between Dr. Parkins' testimony at trial and the statement that Mrs. Aliff claims he made prior to surgery. "Although a witness may be cross-examined and impeached with a prior inconsistent statement, there must be a 'real inconsistency' between the prior statement and the one made at trial." *St. Louis Southwestern Ry. Co.*, 803 S.W.2d at 43. In order to reach the level of an adequate degree of inconsistency, "any material variance between the testimony and the previous statement suffices. The pretrial statement need 'only bend in a different direction' than the trial testimony.... The test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a prior statement of this tenor? ... Thus, if the previous statement is ambiguous and according to one meaning inconsistent with the testimony, it ought to be admitted for the jury's consideration." *McCormick, supra*, at 127–128. "Whether an inconsistency exists between trial testimony and statements made prior to trial is to be *determined by the whole impression and effect* of what has been said and done." *State v. Lyons*, 951 S.W.2d 584, 594 (Mo.App.1997)

---

5. We disagree with Cody's argument that "possible" as Dr. Parkins testified to at trial is the same as "consistent" in his prior statement. We also disagree with the Aliffs' contention that "consistent with" is the same as "probable cause." Because one of the underlying purposes of the foundation requirement is to bring the witness' attention to the alleged statement so that he might fairly admit or deny it, we do not in the context of the questions and answers herein, see the words as equivalent.

(citing *State v. Blankenship*, 830 S.W.2d 1, 9 (Mo. banc 1992)) (emphasis added). Because reasonable judges can differ in determining if a material inconsistency exists, a trial judge must be accorded a "fair range of discretion." *McCormick, supra,* at 128. However, the trial judge should "lean toward receiving such statements in case of doubt." *Id.* Although Cody does not directly attack the Aliffs' assertion that Dr. Parkins made an inconsistent statement, we will consider whether Dr. Parkins' testimony was inconsistent with his statement to the Aliffs prior to Mrs. Aliff's surgery, in an effort to determine if the trial court abused its discretion by excluding the evidence.

At trial, the whole impression and effect of Dr. Parkins' testimony indicates that, in his opinion, the car accident *was not the cause* of Mrs. Aliff's neck injury. Although Dr. Parkins testified that he could not rule out the car wreck as a causative factor and the car wreck was a possible though not probable cause of her injury, his testimony shows that he believed her neck problems resulted from degenerative changes, not a traumatic incident like a car accident. This testimony gives a different impression than did his statement to the Aliffs prior to Mrs. Aliff's surgery. In her offer of proof, Mrs. Aliff testified she asked the doctor what he thought *caused* her injury. She testified in her offer of proof that Dr. Parkins' response to that question was that her condition was "consistent with or what happens when you have a car wreck." In the *context* of their conversation, this testimony indicates that, prior to her surgery, Dr. Parkins was of the opinion that the car accident caused Mrs. Aliff's neck injury. Although this statement may not establish that Dr. Parkins believed the car wreck was the sole or actual cause of Mrs. Aliff's condition, this statement leaves an impression that Dr. Parkins believed the automobile accident was a causative factor of her herniated disc which is inconsistent with his trial testimony that he did not believe her condition was the result of the car accident.

Therefore, we find that the whole impression and effect of Dr. Parkins' trial testimony indicated he believed the car wreck was not the cause of Mrs. Aliff's injury; therefore, his trial testimony was sufficiently inconsistent with his statement to the Aliffs prior to her surgery to permit the admission of the statement to impeach Dr. Parkins. Now that we have determined the trial judge could have properly admitted the evidence to impeach the doctor, we must analyze whether the trial judge abused her discretion by excluding the evidence.

▉ The Aliffs contend that they had an absolute *right* to impeach Dr. Parkins with his prior inconsistent statement relating to the causation of Mrs. Aliff's herniated disc. The Aliffs acknowledge that a trial court has discretion regarding the exclusion of evidence, but they contend that a trial court may not completely foreclose a party's ability to confront a witness with a prior inconsistent statement. We agree that a trial court has limited discretion to prevent impeachment of a witness with a prior inconsistent statement. In *Reno*, the Southern District of this court explained:

> Trial court discretion regarding impeachment of a witness is similarly limited. The court 'has no discretion to prevent any cross-examination at all on a proper subject.' *Merk v. St. Louis Public Service Co.*, 299 S.W.2d 446, 450[2] (Mo.1957). Where a witness's prior inconsistent statement relates specifically to a *paramount issue* in the case, the trial court *may not prevent impeachment* of the witness through use of that statement. *State ex rel. State Highway Comm'n v. Davis*, 466 S.W.2d 172, 173[2] (Mo.App.1971).

*Reno*, 869 S.W.2d at 224. (Emphasis added). In a dissenting opinion, Judge Holman of the Supreme Court of Missouri emphasized the importance of allowing impeachment with a prior inconsistent statement, including the right to prove the inconsistency on rebuttal:

It has often been said that the right of cross-examination is accepted as a universal right, a right basic to our judicial system and one of the most valuable rights given by the law. *The right to prove inconsistent statements that the witness has denied on cross-examination is a necessary extension to the right of cross-examination.* These two rights, when combined, provide perhaps the most effective truth-searching device known to the law.

*Johnson,* 524 S.W.2d at 104 (emphasis added).

In the present case, the circuit court judge did not completely foreclose the Aliffs from confronting Dr. Parkins with his prior statement; the court permitted the Aliffs' counsel to cross-examine Dr. Parkins with regard to a prior statement. The court thereafter refused to allow the Aliffs to present extrinsic evidence to impeach Dr. Parkins; specifically, the court would not permit the Aliffs to testify in rebuttal regarding what Dr. Parkins previously told them about the cause of her herniated disc. Because the statement by Dr. Parkins to the Aliffs prior to surgery was an oral statement, the Aliffs could not confront Dr. Parkins with the statement in writing during cross-examination. The only way the Aliffs could prove what Dr. Parkins told them prior to trial was to call Mrs. Aliff as a rebuttal witness. Dr. Parkins' inconsistent statement relates to causation, the *paramount issue* of the case and, therefore, went to the heart of the controversy. As the court in *Reno* explained, a trial court may not prevent the impeachment of a witness with a prior inconsistent statement regarding a paramount issue in the case. 869 S.W.2d at 224. As discussed, the only way the Aliffs could have impeached Dr. Parkins was to present Mrs. Aliff's testimony and, therefore, the trial court improperly prevented the impeachment of Dr. Parkins regarding the paramount issue in the case. We find the circuit court abused its discretion by preventing the Aliffs from proving Dr. Parkins made an inconsistent statement related to causation.

The fact that the circuit court erred does not necessarily require reversal; the Aliffs must also show prejudice due to the exclusion of Mrs. Aliff's testimony. *Phillips,* 996 S.W.2d at 593. The exclusion of proper evidence is presumed prejudicial unless otherwise shown. *Tune v. Synergy Gas Corp.,* 883 S.W.2d 10, 22 (Mo. banc 1994); *Richcreek,* 908 S.W.2d at 778. But, "[b]y both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the action. § 512.160.2; Rule 84.13(b)." *Richcreek,* 908 S.W.2d at 778 (internal citations omitted). The "litmus test" is "whether the improperly excluded evidence would have changed the outcome...." *Id.; Buys,* 909 S.W.2d at 739. There must be a substantial and glaring injustice before this court will reverse the trial court's determination. *Buys,* 909 S.W.2d at 738.

Dr. Parkins' prior inconsistent statement relates to causation, the central issue in this case. Dr. Parkins was Mrs. Aliff's treating physician and the only orthopedic specialist to testify in the case. His opinion likely weighed heavily in the jury's deliberations. During closing arguments, Cody's counsel emphasized to the jury that Dr. Parkins' opinion as to the cause of Mrs. Aliff's herniated disc was the same at trial as it was at the time he initially met with her. He implied that Dr. Parkins' opinion that Mrs. Aliff's herniated disc resulted from a degenerative condition, not a car wreck, had never changed. If the trial judge had allowed Mrs. Aliff to testify in rebuttal that Dr. Parkins told them that her herniated disc was "consistent with" a car wreck, the jury could have accepted this statement and disbelieved Cody's counsel that Dr. Parkins' opinion as to causation had never changed. The Aliffs could have capitalized on the inconsistency of Dr. Parkins' statement during closing arguments in an effort to discredit his testimony that he believed the injury was caused by a degenerative condition and not an automobile accident. Because the in-

consistency went to the heart of the case and Dr. Parkins was Mrs. Aliff's treating physician, we cannot say that the trial court's error did not affect the outcome of the case.

Cody, however, has filed a supplemental legal file containing portions of the Aliffs' depositions. He claims that the Aliffs' rebuttal testimony would itself have been subject to impeachment by their own prior inconsistent statements. That claimed inconsistency was not pointed out to the trial judge at the time of her ruling on the objection but was raised upon consideration of the motion for new trial. The general principle underlying impeachment by self-contradiction is to "place his contradictory statements side by side, and, as both cannot be correct, we realize that in at least one of the two he must have spoken erroneously." James H. Chadbourn, WIGMORE ON EVIDENCE, § 1017, at 993 (1970). The effect is to reveal bias, faulty observation, defective recollection and, at worse, a disregard for the truth. This applies to the Aliffs' deposition testimony as well. The resolution of these types of issues is the historical and most appropriate province of the jury.

Because the Alliffs' first point disposes of the case, and the issues involved in the Aliffs' second point are unlikely to arise in a subsequent trial, we need not address their second point on appeal.[6]

For the foregoing reasons, we reverse the judgment of the trial court and remand this matter to the trial court for a new trial.

HOWARD, P.J., and ULRICH, J., concur.

---

**6.** In their second point, the Aliffs claim the trial court abused its discretion, or alternatively, committed plain error by failing to grant a new trial on the ground that defense counsel improperly used irrelevant portions of Mrs. Aliff's deposition testimony, which had been excluded in limine to impeach her with a prior inconsistent statement. The deposition testimony pertained to a collision with another driver, no longer a party in the case.