In re the MARRIAGE OF Curtis Dale PATRICK and Denise N. Patrick.

Curtis Dale Patrick, Petitioner–Respondent,

and

Denise N. Patrick, a/k/a Dee Nanette Patrick, Respondent–Appellant.

No. 27564.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 2006.

James R. Sharp, Sharp & Bredesen, Springfield, MO, for appellant.

Robert S. Wiley, Wiley Law Office, P.C., Crane, MO, for respondent.

GARY W. LYNCH, Judge.

Denise N. Patrick ("Wife") appeals the judgment dissolving her marriage to Curtis Dale Patrick ("Husband"). In her single point on appeal, Wife contends the trial court erred in disregarding Janet Pilgrim's ("Pilgrim") testimony as an expert witness on the value of the marital real estate. We disagree and affirm the trial court's judgment.

## 1) *Factual and Procedural History*

Husband and Wife were married to each other for the second time on June 19, 2000. The judgment dissolving their first marriage in 1996 awarded to Husband the marital residence situated on 20½ acres and located at 846 Rock Church Road in Galena, Stone County, Missouri ("Rock Church Road Property"). Motivated by their remarriage, Husband added Wife's name to the title of the Rock Church Road Property. Shortly afterward, the parties refinanced the Rock Church Road Property in order to build a shop building for Husband's muffler business.

Husband testified that the fair market value of the Rock Church Road Property was $155,000.00. Husband based his valuation upon an appraisal obtained at the time of the refinancing in 2001.

Wife testified that she wanted the real estate to be divided in kind. She proposed that the trial court award as her separate property the marital home and five acres ("Home"), to which she assigned a value of $220,000.00, and that Husband receive the shop building and 15½ acres ("Shop"), which she believed had a fair market value of $150,000.00. Accordingly, Wife contended that the fair market value of the entire Rock Church Road Property was $370,000.00.

Wife based her estimate of the value of the Home on a "comparative market analysis" which was prepared by her mother,

Janet Pilgrim, a real estate agent in Stone County. Wife's opinion as to the value of the Shop was based upon real estate listing prices of similar businesses around the area.

Pilgrim testified that she lives in Reeds Spring, Missouri, is a realtor in Kimberling City, Missouri, had approximately four years' experience, and was current on her annual twelve-hour continuing education requirement. Pilgrim further stated that upon Wife's request, she prepared a written document which she entitled "Comparative Market Analysis"[1] ("Exhibit 13") on the Home in April of 2005.

Exhibit 13 was then offered into evidence by Wife and received into evidence by the trial court with no objection by Husband. Thereafter, Wife's counsel inquired of Pilgrim as to the source of her information on the six other properties described in Exhibit 13, and she responded that she relied upon the listing prices of unsold properties. Husband's counsel then objected to Exhibit 13 because it was based upon listing prices and not actual sales. The trial court overruled Husband's objection, stating that: "[W]e'll just take your—your comments and questions, [referring to Husband's counsel], with regard to ... the weight we place on the evidence."

Pilgrim proceeded and testified that of the six other properties she relied upon in Exhibit 13, three were based upon the

---

1. Section 339.503(12) provides:
 "Comparative market analysis", the analysis of sales of similar recently sold properties in order to derive an indication of the probable sales price of a particular property undertaken by a licensed real estate broker or agent, for his or her principal. A comparative market analysis is not an appraisal and shall specifically state it is not an appraisal[.]
 Section 339.501.5(2) provides, in relevant part:

5. The provisions of sections 339.500 to 339.549 ["Missouri Certified and Licensed Real Estate Appraisers Act"] shall not be construed to require a license or certificate for:
 . . . .
 (2) Any licensed real estate broker or salesperson who prepares a comparative market analysis or a broker price opinion[.]

listing price because the respective properties had not been sold as of the date she prepared Exhibit 13, and three were based upon an actual sale price. In answer to Wife's counsel's question as to her "opinion of the fair market value" of the Home, Pilgrim responded: "It's 220,000."

The trial court entered its Amended Judgment and Decree of Dissolution ("Decree") on January 19, 2006. The Decree recites, in part, that:

> The Court has considered the testimony of each witness and has made judgments regarding the credibility of each witness. The Court has accepted some of the testimony of each witness as credible and rejected other parts of the testimony of each witness as not credible. . . . The findings of fact and conclusions of law made by the Court in this Dissolution Of Marriage Judgment are consistent with the Court's determination of the credibility of the evidence and of the witnesses.

The trial court further stated in the Decree that, while it heard evidence from Pilgrim with regard to the value of the real property, "her professional background as a realtor does not qualify her to provide expert testimony with regard to real property value under Missouri law." The trial court also offered that while it was "quite impressed with [Pilgrim's] professional accomplishments, it must disregard her testimony as it related to the value of specific real property involved in this case."

The Decree found that the Rock Church Road Property was Husband's sole and separate property prior to the marriage, but that upon placing Wife's name on the deed after the parties remarried, it became marital property and subject to division by the court. As to its value, the Decree stated:

> In determining the value of the real property in this case the Court consid-

ered the testimony of the parties—as owners—along with other documentary evidence. The Court is convinced the Husband is overly conservative in his estimates and the Wife is overly optimistic in her estimates of the real property's value. Prior to the parties['] separation, the parties did agree to it's [sic] value in their loan application (Respondent's Exhibit 6) of $183,000.00, which the Court accepts as the value of the [Rock Church Road Property].

Accordingly, the trial court set aside to Husband the entirety of the Rock Church Road Property, assigned Husband the mortgage thereon (approximately $124,000.00), divided the other property and debts between the parties, and awarded Wife a cash judgment against Husband in the amount of $19,291.00 to equalize the net division of marital property. Wife filed her Notice of Appeal on February 28, 2006, raising the sole issue that the trial court erred as a matter of law in disregarding Pilgrim's testimony.

### 2) *Standard of Review*

"The trial court's decision in a dissolution proceeding will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *DeMayo v. DeMayo*, 9 S.W.3d 736, 739 (Mo. App.2000). In reviewing the judgment, this court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the decree and disregards all evidence and inferences to the contrary. *Ward v. Ward*, 34 S.W.3d 288, 290–91 (Mo.App.2000). "The appellant bears the burden of demonstrating error[,]" and this court defers "to the trial court's decision, even if the evidence could support a contrary conclusion." *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo.App.2000).

### 3) *Wife's Asserted Trial Court Error*

Wife's single point relied on states:

The trial court erred in refusing to, in connection with its division of marital property in this case, consider Janet Pilgrim as an expert on the value of the marital real estate and her testimony that part of the marital real estate was worth $220,000.00, because said decision was a[n] error of law and an abuse of the trial court's discretion in that the undisputed testimony at trial was that Ms. Pilgrim is a licensed real estate agent in Stone County with four years['] experience, familiar with the value of real property in Stone County, and that her valuation of the subject property was based on a comparative market analysis [Exhibit 13] of recent sales of other similarly situated homes and parcels of real estate in Stone County and therefore her testimony met the requirements of § 490.065 R.S.Mo. for the admissibility of expert testimony.

We note that Wife asserts in this point and again in the argument portion of her brief that Exhibit 13 was based on *"recent sales* of other similarly situated homes and parcels of real estate in Stone County." (Emphasis added). This assertion is not supported by the record, in that Pilgrim testified that Exhibit 13 was premised upon a combination of the listing prices of three unsold properties and sales prices for three actual sales, and there is nothing in the record either by way of testimony or by Exhibit 13 to support that any of the actual sales were recent, i.e., proximate in time to the date of valuation of the Home by Pilgrim.

### 4) *Expert testimony as to Valuation of the Home*

 "The admission or exclusion of expert opinion testimony is a matter within the discretion of the trial court, and this Court will not interfere with that discretion unless it plainly appears that it has been abused." *Eltiste v. Ford Motor Co.,* 167 S.W.3d 742, 750–51 (Mo.App.2005). When expert testimony is excluded, as Wife contends occurred in this case when the trial court concluded that it "must disregard" Pilgrim's testimony, our " 'focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding the evidence.' " *Jones v. Grant,* 75 S.W.3d 858, 862 (Mo. App.2002) (quoting *Aliff v. Cody,* 26 S.W.3d 309, 314 (Mo.App.2000)). "Regardless of the rationale ... for the trial court's exclusion of it, if we discern from the record any recognizable ground for the trial court's exclusion ... we will uphold the ruling." *Id.*

Because dissolution of marriage is a civil action, the trial court's consideration of expert testimony is governed by Section 490.065.[2] *State Bd. of Registration for the Healing Arts v. McDonagh,* 123 S.W.3d 146, 153 (Mo.banc 2003); *In the Matter of the Care and Treatment of Goddard,* 144 S.W.3d 848, 855 (Mo.App.2004). Section 490.065 provides, in relevant part:

1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

. . . .

3. The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reason-

**2.** All references to statutes are to RSMo 2000, unless otherwise indicated.

ably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

### a) *Qualification of Pilgrim as an Expert Witness*

Pilgrim had been trained as a realtor, worked as a realtor for approximately four years prior to trial, and was current on all her professional educational requirements. Wife argues that these factors qualified Pilgrim as a matter of law under section 490.065.1 to render an opinion as to the fair market value of the Home. Wife then concludes that the trial court's finding that Pilgrim's "professional background as a realtor does not qualify her to provide expert testimony with regard to real property values under Missouri law" is an erroneous declaration of the law and that the trial court's reliance upon this erroneous declaration to conclude it "must disregard" her testimony is an erroneous application of the law. In support of this claimed error, Wife cites *State ex rel. Mo. Highways & Transp. Comm'n v. Stewart,* 156 S.W.3d 496, 498 (Mo.App.2005), and *Rowe v. Moss,* 656 S.W.2d 318, 323 (Mo.App. 1983), wherein realtors have been found to be qualified to render expert opinions as to the value of real estate.

Wife's argument assumes that Pilgrim's testimony otherwise met the requirements of section 490.065 for consideration by the trial court. This assumption is incorrect. Because we hereinafter find that the trial court did not abuse its discretion in disregarding Pilgrim's testimony on the ground that it was not in compliance with section 490.065.3, as it was not based upon facts or data that are reasonably relied upon by experts in the field, we need not address whether the trial court erroneously declared or applied the law as to Pilgrim's

qualifications under section 490.065.1. Even if the trial court committed such error as Wife contends, but which we do not decide, it did not prejudice Wife. *Jones,* 75 S.W.3d at 862.

### b) *Facts or Data Relied Upon by Experts in the Particular Field*

The facts or data upon which an expert bases an opinion must (1) be of a type reasonably relied upon by experts in the field in forming opinions upon the subject, and (2) must be otherwise reasonably reliable. Section 490.065.3. "That section requires the court to consider whether experts in the field reasonably rely on the type of facts and data used by the expert or if the methodology is otherwise reasonably reliable." *McGuire v. Seltsam,* 138 S.W.3d 718, 721 (Mo.banc 2004). If it is not, the testimony is inadmissible. *Id.*

### i) *Comparative Sales Approach*

Three methods for the application of certain facts or data to value real estate have been judicially recognized: (1) the comparable or direct sales/market approach; (2) the cost approach, and (3) the income approach. *State ex rel. Mo. Highway & Transp. Comm'n v. McDonald's Corp.,* 872 S.W.2d 108, 112 (Mo.App.1994). In this case, Pilgrim apparently attempts to base Exhibit 13 and her testimony of the valuation of the Home upon the comparable sales approach method.[3]

 "The comparable sales approach consists of comparing voluntary *sales* of similar properties from the same general location *which occurred close in time"* to the date of valuation. *Id.* (Emphasis added). "An expert testifying on the value of property ... may base his opinions in part upon inquiries concerning other *sales,* even though such sources constitute hearsay

---

**3.** The record is silent as to any facts or data that would support a valuation of the Home

using either the income approach method or the cost approach method.

and would ordinarily be inadmissible." *State ex rel. Mo. Highway & Transp. Comm'n v. Sisk*, 954 S.W.2d 503, 508 (Mo. App.1997). (Emphasis added). Exhibit 13 and Pilgrim's testimony do not rise to the level of a comparable sales approach to support an expert opinion as to the value of the Home. Three grounds support this conclusion.

■ First, this approach requires that *sales* of similar properties be compared. In this case, Pilgrim relied upon the listing prices of three unsold properties. The general rule is that *offers* may not be used in the comparative sale approach to the valuation of real property. *City of Springfield v. Love*, 721 S.W.2d 208, 214 (Mo.App.1986). At best, the listing price of a parcel is an offer to sell and, as such, may not be used to support a comparable sale approach to valuation of property. *Id.* Wife has cited no case, and we find none, which authorizes the use of a listing price of an unsold parcel of real estate to support a comparable sale approach to the valuation of real estate.

Second, the comparative sales used in this valuation approach must be *close in time* to the date of valuation. *McDonald's Corp.*, 872 S.W.2d at 112. Exhibit 13 and Pilgrim's testimony are silent as to when any of the three sales listed in Exhibit 13

occurred.[4] Without this evidence, the trial court could not determine whether the sales met this "close in time" requirement. Obviously, the other three listed but unsold properties in Exhibit 13 have not been sold "close in time" to the date of the valuation.

■ Finally, the comparative sales approach requires that sales of similar properties be *compared* to the property to be valued. *Id.* Exhibit 13 lists the following characteristics for the Home and for each of the six other properties: Area/Location; Year Built; Sq Ft Range; Bedrooms; Bathrooms; Waterfront; Acreage; Construction; Style; Garage; Fireplace; Heating; Cooling; Dock/Slip Sz; Features/Appliances; and Comments. Space is provided next to the listing of each characteristic for the six other properties to indicate a monetary adjustment for differences in the particular characteristic on that property as compared to the Home. While this listing of characteristics shows substantial differences between the characteristics of each of the six other properties and the characteristics of the Home, and Pilgrim acknowledged in her testimony that adjustments were required,[5] no monetary adjustments for any listed characteristic for any of the six other properties were made on Exhibit 13. A space is also

---

4. Pilgrim noted in her testimony that: "[Exhibit 13] lists the days on the market, but it does not list the actual date that it closed." The number of days a property is on the market does not aid the trial court in determining whether or not a sale is recent. For example, a property could have been on the market for ninety days and sold either yesterday or five years ago.

5. Pilgrim testified:
 With the *comparables* for one thing, in this area, it's pretty difficult to get something that you can match apples to apples. So you have to take properties that are as close as you can get, sometimes not in the same

neighborhood. You *compare* square footage, number of bedrooms, *and then you have to give and take.* If there's an additional acreage in some, you, you know, *have to add that on or subtract it, depending upon the property that you are comparing it to.* And so each property was as close as I could get, square footage, year built, the— the same type of house. For example, I did not *compare* a house with—a stick built house with vinyl siding to an all brick home, or a stick built home to a manufactured home. So you try to make the *comparison* as close as you can. (Emphasis added).

provided to list the "Adjustment SubTotal" for each of the six other properties. For each property on Exhibit 13, this space is blank. In the additional space provided for the "Adjusted Price" for each of the six other properties on Exhibit 13, Pilgrim used either the Listing Price or the Closing Price, based upon whether a respective property was still listed or had been sold. This last action indicates that Pilgrim made no adjustments for any differences in the six other properties as compared to the Home.

Exhibit 13 is completely void of any comparison of the six other properties to the Home. It is nothing more than a cursory listing of a few of the individual characteristics of seven unrelated properties. Likewise, Pilgrim's testimony completely lacked any comparison of the characteristics of the six other properties as they related to the Home.[6]

For these reasons, Pilgrim's testimony, including Exhibit 13, does not meet the requirements of the comparable sale approach method for valuation of real estate. Therefore, this method of valuing real estate does not afford Wife any judicial recognition that the facts or data upon which she relied in Exhibit 13 are of the type reasonably relied upon by experts in the field in forming opinions or inferences upon this subject, as required by section 490.065.3.

### ii) *No Evidence in the Record*

■■■■ The determination by the trial court that the facts or data relied upon by an expert are of a type reasonably relied upon by experts in the field may be supported by the testimony of the expert witness. *Goddard*, 144 S.W.3d at 854. In

this case, Pilgrim testified that she based her opinion upon Exhibit 13, which, in part, was based upon the listing prices of three unsold parcels of real estate. However, there was no testimony by Pilgrim, the only proffered expert witness, nor was there any other evidence in the record, that other professionals in Pilgrim's occupation reasonably rely upon listing prices of unsold properties as a basis for determining the value of a particular parcel of real estate as required by section 490.065.3. The lack of such evidence in the record supports the trial court's disregard of Pilgrim's testimony as to the value of the Home. *See Sisk*, 954 S.W.2d at 509.

### 5) *Conclusion and Decision*

■■■ The sum total of Pilgrim's testimony is that she is a realtor and that she prepared Exhibit 13, which lists a few characteristics in a perfunctory manner of seven unrelated parcels of real estate, but which completely fails to analyze or compare the properties in any manner. Based solely upon Exhibit 13, Pilgrim's opinion of the fair market value of the Home was $220,000.00. "[A]n expert's opinion must be founded upon substantial information, not mere conjecture or speculation, and there must be a rational basis for the opinion." *Rigali v. Kensington Place Homeowners' Ass'n*, 103 S.W.3d 839, 845 (Mo.App.2003) (citing *Missouri Pipeline Co. v. Wilmes*, 898 S.W.2d 682, 687 (Mo. App.1995)). For the reasons set forth in this opinion, Exhibit 13 does not rise to the level of substantial information to support and does not provide a rational basis for Pilgrim's opinion as to the value of the Home.

---

6. We express no opinion as to the nature, type, quantity or quality of the characteristics of the various properties which must be compared in relation to the subject property in order to rise to the level of a comparative sales approach methodology. We leave that determination for a case where an expert witness at least attempts a minimal effort in making some comparisons between the various properties and the subject property.

When abuse of discretion is raised, the reviewing court determines whether a trial court's ruling is clearly against the logic of the circumstances before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Nelson v. Waxman,* 9 S.W.3d 601, 604 (Mo. banc 2000). The trial court does not abuse its discretion if reasonable persons can differ as to the propriety of the trial court's action. *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo. banc 2003).

In this case, there is no legal basis or evidentiary basis to support a trial court determination that the facts or data upon which Pilgrim relied in forming her opinion as to the value of the Home are of the type reasonably relied upon by experts in the field when determining the value of a parcel of real estate, as required by section 490.065.3. Given this finding, the trial court's disregard of Pilgrim's testimony is not clearly against the logic of the circumstances, does not shock our sense of justice, nor does it indicate a lack of careful, deliberate consideration. Therefore, the trial court did not abuse its discretion in disregarding Pilgrim's testimony. Point one is denied.

The judgment of the trial court is affirmed.

GARRISON and BARNEY, JJ., concur.

